IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NOVO NORDISK INC. and<br>NOVO NORDISK A/S,<br><br>        Plaintiffs,<br><br>        v.<br><br>VIATRIS INC. and<br>MYLAN PHARMACEUTICALS INC.,<br><br>        Defendants. | C.A. No. 23-101 (CFC)<br><br>**ANDA CASE** |

## STIPULATED ORDER REGARDING THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION

**WHEREAS** the parties to the above-captioned action (the "Action"), Plaintiffs Novo Nordisk Inc. and Novo Nordisk A/S (collectively, "Novo Nordisk") and Defendants Viatris Inc. ("Viatris"), and Mylan Pharmaceuticals Inc ("MPI") (collectively, "Defendants") have, through counsel, in accordance with the Scheduling Order entered in this Action (D.I. 27), and pursuant to Federal Rule of Civil Procedure 26(f), conferred and stipulated to entry of this Order Regarding the Discovery of Electronically Stored Information (the "Order"); and

**WHEREAS** the parties will seek discovery of electronically stored information ("ESI") pursuant to Rule 26 of the Federal Rules of Civil Procedure and each possess ESI that may be produced in this proceeding; and

**WHEREAS** the parties intend for this Order to apply to the collection, processing, and production of all ESI, including all manner of information stored in

1

any electronic format, and to assist the parties in resolving any disputes regarding the discovery of ESI without the Court's intervention; and

**WHEREAS** the parties have established good cause for entry of this Order;

**NOW THEREFORE**, pursuant to Federal Rule of Civil Procedure 26, upon the stipulation and consent of the parties and for good cause shown, the Court hereby **ORDERS**:

## I. PRESERVATION OF DISCOVERABLE INFORMATION

The parties acknowledge their obligation to take reasonable and proportional steps to preserve discoverable information in their possession, custody or control. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve the nonduplicative discoverable information currently in their possession, custody or control. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

Absent a showing of good cause by the requesting party, the categories of ESI identified in **Schedule A** attached hereto need not be preserved.

## II. SEARCHING FOR ESI

The parties will search reasonably accessible ESI repositories (*e.g.*, active

local drives, active network drives, and email mailboxes) where discoverable information is likely to reside in response to discovery requests seeking information that is relevant and proportional to the needs of the case. The parties need not search sources that are not reasonably accessible because of undue burden or cost (*e.g.*, sources intended for backup or disaster recovery purposes, such as magnetic tapes, optical disks, SANs, and other forms of backup media; legacy data from obsolete systems; deleted data remaining in fragmented form; transient data; or any other data that would require forensic inspection to retrieve).

### III.  CUSTODIAL AND NON-CUSTODIAL DATA SOURCES

In their Paragraph 3 Initial Disclosures served on May 8, 2023, the parties identified custodians who are most likely to have discoverable information in their possession, custody or control and the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration. A non-custodial data source is a system or container that stores ESI, access or use of which is not limited to a single individual (*e.g.*, enterprise system or database). The parties shall locate potentially responsive custodial and non-custodial ESI for review and potential production by running the agreed upon search terms (*see* Section IV) across the ESI collected from their custodians and non-custodial data sources.

Each party will search for hard-copy documents and ESI in the files of their custodians, and held in non-custodial data sources, without regard to whether such information may be withheld on the grounds of privilege, work product, or any other basis.  The identification of custodians and non-custodial data sources in the parties' Paragraph 3 Initial Disclosures is not intended to limit or alter any party's obligations to search for and produce hard-copy documents and ESI from relevant custodians and non-custodial data sources.  As such, the parties may request production of documents from additional custodians and non-custodial data sources during fact discovery.  Such requests will be considered in good faith, upon a showing of good cause.

## IV.   SEARCH TERMS

The parties' use of search terms is not a substitute for and does not limit the parties' obligations to respond to requests for production.  The parties will make a good faith effort to determine search terms that are reasonably tailored and reasonably likely to identify responsive ESI.  The parties agree that their respective search terms shall include any relevant internal project names or codes, to the extent that such names or codes exist.  No later than August 9, 2023, the parties shall exchange a list of intended terms to be used to search their ESI.  Defendants may request that Novo Nordisk include no more than ten (10) additional search terms, and Novo Nordisk may request that each Defendant Group include no more than ten

(10) additional search terms. The parties shall thereafter meet and confer, if necessary, to finalize a list of no more than fifteen (15) search terms total for each party, in view of the party's own intended terms and the opposing party's proposed additions thereto. The parties will diligently work to generate final lists of search terms by no later than August 16, 2023.

Indiscriminate terms (*e.g.*, a bare product or company name) may be used in a party's search of its own documents but are inappropriate to request of the opposing party unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word or concept. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/#") is encouraged to reasonably tailor discovery. If a search results in an unduly burdensome number of identified documents, the parties shall negotiate in good faith to reduce this number by narrowing the search terms or date range, implementing other search restrictions, or utilizing predictive coding or other forms of technology assisted review until the yield of documents is reasonable.

## V.  PRODUCTION FORMAT

ESI should be produced, as far as reasonably possible, in the following formats:

**A.   TIFFs.**  Responsive ESI must be derived from the original electronic media and converted to single page, TIFF images (with a minimum resolution 300 D.P.I. Group IV compression single-page) with an 8½ x 11-inch page size.  Images shall be clearly labeled to show redacted material and the reason therefore, pursuant to Section VII *infra*.

**B.   Native Format.**  The parties generally agree to produce documents as TIFF images, rather than in native format.  However, the parties agree to produce spreadsheets (including Microsoft Excel files) in native format.  If Microsoft Excel files require redactions, the parties may produce such spreadsheets as images or in a modified native format; if the latter, the redactions will be clearly designated or identified.  The parties may produce presentations (including Microsoft PowerPoint files) in native format.  If a Microsoft PowerPoint file requires redactions, it will be produced as TIFF images, and not natively.  For any presentation (including Microsoft PowerPoint files) that is produced as TIFF images, such images will be produced in color and include any speaker notes.  Notwithstanding the foregoing, the parties reserve the right to request, on a document-by-document basis, production of a document in native format, provided showing of a particularized and

reasonable need (*e.g.*, to conduct statistical analysis of raw data that is only reasonably accessible in native format; illegibility of the document in image-format; or poor usability of the document in image-format).

  **C.** **Image Load Files.** Documents shall be accompanied by an image load file produced in Opticon (*.OPT) format that should reflect the logical document breaks and parent/child relationship between documents.

  **D.** **Database Load Files/Cross-Reference Files.** Documents shall be accompanied by a Concordance delimited (*.DAT) load file containing the appropriate link fields and directory information for every file (*e.g.*, TIFF or native files) produced.

  **E.** **Metadata.** The parties shall ensure that the metadata of all documents is preserved and produced, including when the data is converted from its native format to an image format. The parties agree to produce the following metadata, to the extent such metadata exists:

- PRODBEG
- PRODEND
- PRODBEGATTACH
- PRODENDATTACH
- ATTACHRANGE
- CUSTODIAN
- ALLCUSTODIANS
- EMAIL TO
- EMAIL FROM
- EMAIL CC
- EMAIL BCC
- EMAIL SENTTIME
- EMAIL RECEIVEDDATE
- EMAIL RECEIVEDTIME
- FILENAME
- AUTHOR
- DATELASTMODIFIED
- DATECREATED
- FILESIZE
- FILEEXTENSION
- MD5HASH
- TEXTLINK

- EMAIL SUBJECT
- EMAIL SENTDATE
- CONVERSATION INDEX
- FILE PATH

If information in a metadata field is properly the subject of redaction, the field shall include the word "Redacted."

  **F.**  **Unique IDs.** Each image (or native file) shall be assigned and produced with a unique Bates number.

  **G.**  **Text files.**  Parties will make reasonable efforts to produce extracted text, to the extent that it is available. If extractable text does not exist, then Optical Character Recognition ("OCR") shall be performed for documents produced in TIFF and/or native format. Extracted Text and OCR should be produced as follows:

    **1.**  Accompanying extracted text files shall be document level text files and should be named with the corresponding Production Bates number field followed by the extension ".TXT."

    **2.**  For documents containing redactions, OCR text will be substituted. OCR Text files shall be document level text files and should be named with the corresponding Production Bates number field followed by the extension ".TXT."

Document level Extracted Text/OCR will be provided in a Text folder. Text files will be named per the ProdBeg value for each document. As indicated above, a DocText link will be included in the *.DAT file that will indicate the path to the text file for each record. The text should not be included in the DAT itself, but instead

in a separate folder or folders.

**H.     De-Duplication Methodology.**  The parties must remove duplicates from ESI prior to production, on a global basis, using the MD5Hash value.  The party will provide a multiple custodian field identifying each custodian of the document.  If a duplicate exists that is part of a family, the duplicate will only be removed if the entire family is removable as a duplicate (i.e., a single document will not be removed from a non-duplicate family even if the single document is a duplicate).

The parties may also perform email threading on custodial email ESI and produce only the most inclusive unique thread, so long as lesser-included emails and attachment(s) in the thread are contained within the final message for production.

**I.     Excluded ESI.**  Parties need not produce non-human readable electronic documents generated by the search terms (for example documents that include only machine-readable language), except upon a showing of good cause by the requesting party.

## VI.   HARD-COPY DOCUMENTS

The parties agree they have a separate and independent obligation to produce hard-copy documents responsive to a discovery request.  Hard-copy documents shall be scanned and produced in the same manner as electronic documents (i.e., TIFF

images and OCR).  The parties recognize that scanned hard-copy documents will not have, and need not be transmitted with, the metadata fields set forth *supra* in Section V.  Instead, hard-copy documents shall be produced with only the following metadata: ProdBeg; ProdEnd; ProdBegAttach; ProdEndAttach; and Custodian.

### VII. REDACTIONS

    **A.**    Prior to production, a party or third party may redact from ESI and hard-copy documents all privileged information, including information protected by the attorney-client and work product privileges.  Such redactions should clearly indicate that the material is being redacted because it is privileged, consistent with the requirements of the parties' Stipulated Protective Order ("Priv" or "Privileged").

    **B.**    Prior to production, a party or third party may redact from ESI and hard-copy documents that are otherwise responsive commercially sensitive, non-responsive information on products, or products in development, that are not at issue in this Action.  Such redactions should clearly indicate that the material is being redacted because it is non-responsive as related to other products, or products that are in development, that are not at issue in this Action ("NR" or "Non-Responsive").  Nothing herein permits redactions of material that is responsive, relevant, or necessary to understand responsive or relevant portions of the otherwise responsive document.

    **C.**    Prior to production, a party or third party may redact from ESI and hard-copy documents all personal information, including the following: home address, home and cell phone numbers, names of spouses and children, credit card information, benefits information, compensation information, and personal information found in employee files and medical records. Such redactions should clearly indicate that the material is being redacted because it is protected health information ("HIPAA") or protected personal information ("PI"). This paragraph applies, but is not limited to, information that a party or third party has a reasonable belief that it is legally obligated (in this jurisdiction or others) to redact, such as personal information subject to European privacy laws.

**VIII. LOGGING PRIVILEGED DOCUMENTS OR INFORMATION**

    The parties will confer regarding whether an exchange of logs identifying documents or information withheld as privileged is warranted. If an exchange is warranted, the parties will confer regarding the timing for such an exchange and the format and content of any such logs.

    The parties agree that in no event shall the parties be required to include on any privilege log exchanged in this case documents or information generated on or after January 27, 2023.

## IX.  MISCELLANEOUS

Unless otherwise provided herein, nothing in this Order excuses a party from full and complete compliance with all applicable Federal and Local Rules of Civil Procedure.

**AGREED AND STIPULATED TO**:

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

OF COUNSEL:

Nicholas Groombridge
Josephine Young
Peter Sandel
Jenny C. Wu
Daniel J. Klein
Naz E. Wehrli
Joshua Reich
Scott Miller
GROOMBRIDGE, WU, BAUGHMAN
  & STONE LLP
565 Fifth Ave, Suite 2900
New York, NY 10017
(332) 269-0030

Philip S. May
GROOMBRIDGE, WU, BAUGHMAN
  & STONE LLP
801 17th Street NW, Suite 1050
Washington, DC 20006
(202) 505-5830

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Novo Nordisk Inc. and Novo Nordisk A/S*

13

<table>
<tr><td>

OF COUNSEL:

Shannon M. Bloodworth
Brandon M. White
PERKINS COIE LLP
700 Thirteenth Street, N.W.,
Suite 800
Washington, D.C. 20005-3960
(202) 654-6200

Emily J. Greb
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703
(608) 663-7460

Bryan D. Beel
PERKINS COIE LLP
1120 NW Couch Street
Tenth Floor
Portland, OR 97209
(503) 727-2000

August 2, 2023

</td><td>

STAMOULIS & WEINBLATT LLC

*/s/ Stamatios Stamoulis*

_____
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 North West Street, 3rd Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Defendants Viatris Inc. and Mylan Pharmaceuticals Inc.*

</td></tr>
</table>

SO ORDERED this _____ day of _____, 2023.

_____
UNITED STATES DISTRICT JUDGE

## Schedule A

1. Deleted, slack, fragmented, or other data only accessible by forensics.
2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
3. On-line access data such as temporary internet files, history, cache, cookies, and the like.
4. Data in metadata fields that are frequently updated automatically, such as last opened dates.
5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.
6. Voice messages.
7. Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.
8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.
9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.
10. Logs of calls made from mobile devices.
11. Server, system or network logs.
12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.
13. Data remaining from systems no longer in use that is unintelligible on the systems in use.