IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOVO NORDISK INC. and<br>NOVO NORDISK A/S, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 23-101 (CFC) |
| | ) | CONSOLIDATED |
| v. | ) | **ANDA CASE** |
| | ) | |
| MYLAN PHARMACEUTICALS INC., | ) | ██████████████████ |
| | ) | ████████████ |
| Defendant. | ) | REDACTED - PUBLIC VERSION |

## [PROPOSED] JOINT PRETRIAL ORDER

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs Novo Nordisk
Inc. and Novo Nordisk A/S*

STAMOULIS & WEINBLATT LLC
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 North West Street, 3rd Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Defendant
Mylan Pharmaceuticals Inc.*

Original filing date: January 23, 2026
Redacted filing date: January 30, 2026

TABLE OF CONTENTS

Page

I.    Nature of the Case and Pleadings ...................................................................1

      A.    Nature of the Action .......................................................................1

            1.    Mylan's Notice Letters ........................................................3

            2.    Complaints, Answers, Defenses, and Counterclaims ...............4

            3.    Other Stipulations or Certifications Impacting this Action ........8

      B.    Asserted Patents and Claims ...............................................................9

            1.    The '343 Patent ...................................................................9

            2.    The '191 Patent ...................................................................10

            3.    The '779 Patent ...................................................................12

            4.    The '017 Patent ...................................................................13

      C.    Claim Construction.........................................................................15

      D.    Pending Motions.............................................................................18

II.   Jurisdiction and Standing ...............................................................................18

III.  Joint Statement of Admitted Facts ................................................................19

IV.   Statement of the Issues of Fact Which Remain to Be Litigated ..................19

V.    Statement of the Issues of Law Which Remain to Be Litigated ..................20

VI.   Exhibits ...........................................................................................................20

      A.    Trial Exhibits.................................................................................20

      B.    Stipulations Concerning Trial Exhibits.............................................25

      C.    Procedure for Trial Exhibit Disclosure .............................................27

## TABLE OF CONTENTS (CONTINUED)

1. Exchange of Exhibits ................................................................27

2. Objections to Exhibits ..............................................................28

3. Courtesy Copies of Exhibits ....................................................28

D. Illustrative Aids ...............................................................................29

1. Procedure for Disclosures Related to Opening Statements and Closing Arguments ....................................................................31

VII. Witnesses ........................................................................................................32

A. List of Witnesses to be Called...................................................32

B. Agreements Regarding Presentation and Identification of Witnesses 33

C. Testimony by Deposition ............................................................37

VIII. Parties' Brief Statement of Intended Proofs....................................................41

A. Novo Nordisk's Statement .........................................................41

B. Mylan's Statement .....................................................................41

IX. Motions *In Limine* .........................................................................................42

X. Other Matters ..................................................................................................42

A. Discovery ....................................................................................42

B. Non-Jury Trial ............................................................................42

C. Order of Presentation..................................................................42

D. Post-Trial Briefing .....................................................................44

E. Length of Trial............................................................................45

F. Handling of Confidential Information at Trial...........................46

XI. Amendments to the Pleadings .........................................................................47

XII. Certification of Settlement Discussions ..........................................................47

## [PROPOSED] JOINT PRETRIAL ORDER

1.      This matter comes before the Court on February 12, 2026, at 10:00 a.m. for a pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure, District of Delaware Local Rule 16.3, and this Court's Revised Scheduling Order.  D.I. 233; D.I. 272.  Pursuant to Local Rule 16.3, Plaintiffs Novo Nordisk Inc. and Novo Nordisk A/S (collectively, "Novo Nordisk" or "Plaintiffs") and Defendant Mylan Pharmaceuticals Inc. ("Mylan" or "Defendant") submit this [Proposed] Joint Pretrial Order governing the bench trial scheduled to begin in this consolidated action on March 2, 2026.

## I.     Nature of the Case and Pleadings

### A.     Nature of the Action

2.      The claims and counterclaims in this patent infringement action arise under the Hatch-Waxman Act, 21 U.S.C. § 355(j), and the patent laws of the United States, Title 35, Section 271, and involve U.S. Patent No. 8,129,343 (the "'343 Patent"), U.S. Patent No. 8,536,122 (the "'122 Patent")[1], U.S. Patent No. 11,318,191

---

[1]  Mylan amended its Paragraph IV certification as to the '122 Patent to a Paragraph III certification and the '122 Patent will therefore not be litigated in this trial. However, no judgment has been entered with respect to the '122 Patent and it has not been formally dismissed from the case.

1

(the "'191 Patent"), U.S. Patent No. 12,029,779 (the "'779 Patent"), and U.S. Patent No. 12,214,017 (the "'017 Patent") (collectively, the "Asserted Patents").[2]

3.     Case numbers C.A. No. 23-101 (CFC), C.A. No. 24-50 (CFC), C.A. No. 24-1013 (CFC), and C.A. No. 24-276 (CFC) have been consolidated under lead case number C.A. No. 23-101 (CFC) for all purposes (the "Consolidated Delaware Actions").  D.I. 132; D.I. 230; D.I. 272.[3]

4.     The FDA has received for review Mylan's Abbreviated New Drug Application No. 217705 ("Mylan's ANDA"), which Mylan submitted to the FDA pursuant to 21 U.S.C. § 355(j), seeking approval of a generic version of Novo Nordisk's Wegovy® semaglutide injection in five strengths, 0.25 mg/0.5 mL, 0.5 mg/0.5 mL, 1 mg/0.5 mL, 1.7 mg/0.75 mL, and 2.4 mg/0.75 mL single-dose prefilled pens for subcutaneous use ("Mylan's ANDA Product") prior to the expiration of the Asserted Patents.

5.     Mylan included certifications in its ANDA, pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV certifications") that the Asserted Patents are

---

[2]  Because the priority applications for the '343 Patent and '122 Patent were filed prior to March 16, 2013, the pre-AIA conditions for patentability apply as to those patents.  Because the priority applications for the '191 Patent, '779 Patent, and '017 Patent were filed after March 16, 2013, the post-AIA conditions for patentability apply as to those patents.  All citations to the applicable statutes refer to the post-AIA versions.

[3]  All docket cites herein are to the docket of case number C.A. No. 23-101 (CFC) unless otherwise specified.

invalid, or will not be infringed by the commercial manufacture, use, or sale of Mylan's ANDA Product.

### 1.    Mylan's Notice Letters

6.    By letter dated December 16, 2022, Mylan sent notice of its Paragraph IV certifications to Novo Nordisk, providing its asserted factual and legal bases for its contentions that, among other patents, the '343, '122, and '191 Patents are invalid or will not be infringed by the commercial manufacture, use, or sale of Mylan's ANDA Product.

7.    By letter dated January 22, 2025, Mylan sent notice of its Paragraph IV certifications to Novo Nordisk, providing its asserted factual and legal bases for its contentions that the '779 Patent, which is listed in the Orange Book for only the 2.4 mg strength of Wegovy®, is invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use, or sale of Mylan's proposed ANDA Product.

8.    By letter dated March 20, 2025, Mylan sent notice of its Paragraph IV certifications to Novo Nordisk, providing its asserted factual and legal bases for its contentions that the '017 Patent is invalid, unenforceable, and/or will not be infringed by the commercial manufacture, use, or sale of Mylan's ANDA Product.

## 2.    Complaints, Answers, Defenses, and Counterclaims

9.    On January 27, 2023, Novo Nordisk brought suit against Mylan alleging infringement of, among other patents,[4] the '343, '122, and '191 Patents, pursuant to 35 U.S.C. § 271(e)(2)(A), based on Mylan's filing of Mylan's ANDA, which includes Paragraph IV certifications.[5]  D.I. 1.  Novo Nordisk asserted that Mylan's sale, offer for sale, use, or commercial manufacture of Mylan's ANDA Product within the United States, or importation of Mylan's ANDA Product into the United States, during the terms of the '343, '122, and '191 Patents would infringe the asserted claims under 35 U.S.C. §§ 271(a), (b), and/or (c)[6].  *Id.*  Novo Nordisk requested injunctive relief, a judgment that the effective date of any approval of Mylan's ANDA not be prior to expiration of the Asserted Patents, and reasonable attorneys' fees.  *Id.*

---

[4]  Novo Nordisk asserted U.S. Patent No. 9,764,003 (the "'003 Patent") and U.S. Patent No. 10,888,605 (the "'605 Patent") in its original complaint.  D.I. 1.  Novo Nordisk and Mylan stipulated and agreed to the dismissal without prejudice of all claims for infringement of the '605 Patent and all counterclaims concerning the '605 Patent.  D.I. 270 (Mar. 21, 2025).  The Court separately granted Mylan's Motion for Judgment on the Pleadings finding no direct, contributory, or induced infringement of the asserted claims of the '003 Patent, and entered Final Judgment on August 21, 2025.  D.I. 329.

[5] Plaintiffs initially brought suit against both Viatris Inc. and Mylan Pharmaceuticals Inc., but Viatris Inc. was dismissed from the case.  C.A. No. 23-cv-00101-CFC, D.I. 60 (Oct. 31, 2023).

[6] Novo Nordisk is not, however, asserting contributory infringement of the '343, '122, or '191 Patents under 35 U.S.C. § 271(c) at trial.

10.     On March 31, 2023, Mylan served its answer, affirmative defenses, and counterclaims in response to Novo Nordisk's complaint.  D.I. 11.  Mylan denied the substantive allegations of Novo Nordisk's complaint and each claim for relief.  *Id.* Mylan asserted defenses of invalidity and non-infringement, asserted counterclaims seeking declaratory judgment of non-infringement and invalidity, and requested reasonable attorneys' fees.  *Id.*

11.     On April 21, 2023, Novo Nordisk answered all of Mylan's counterclaims denying the substantive allegations and each claim for relief.  D.I. 14.

12.     On September 5, 2024, Novo Nordisk brought suit against Mylan alleging infringement of the '779 Patent, pursuant to 35 U.S.C. § 271(e)(2)(A), based on the filing of Mylan's ANDA.  C.A. No. 24-1013 (CFC), D.I. 1.  Novo Nordisk asserted that Mylan's sale, offer for sale, use, or commercial manufacture of Mylan's ANDA Product within the United States, or importation of Mylan's ANDA Product into the United States, during the term of the '779 Patent would infringe the asserted claims under 35 U.S.C. §§ 271(a), (b), and/or (c)[7].  *Id.*  Novo Nordisk requested injunctive relief, a judgment that the effective date of any approval of Mylan's ANDA not be prior to expiration of the Asserted Patents, and reasonable attorneys' fees.  *Id.*

---

[7] Novo Nordisk is no longer asserting contributory infringement of the '779 Patent under 35 U.S.C. § 271(c).

13.    On November 12, 2024, Mylan served its answer, affirmative defenses, and counterclaims in response to Novo Nordisk's complaint.  C.A. No. 24-1013 (CFC), D.I. 10.   Mylan denied the substantive allegations of Novo Nordisk's complaint and each claim for relief.  *Id.*  Mylan asserted affirmative defenses of invalidity and non-infringement, asserted counterclaims seeking declaratory judgment of non-infringement and invalidity, and requested injunctive relief, costs, and reasonable attorneys' fees.  *Id.*

14.    On December 3, 2024, Novo Nordisk answered all of Mylan's counterclaims denying the substantive allegations and each claim for relief.  C.A. No. 24-1013 (CFC), D.I. 15.

15.    On March 7, 2025, Novo Nordisk brought suit against Mylan alleging infringement of the '017 Patent, pursuant to 35 U.S.C. § 271(e)(2)(A), based on Mylan's filing of Mylan's ANDA.  C.A. No. 25-276 (CFC), D.I. 1.  Novo Nordisk asserted that Mylan's sale, offer for sale, use, or commercial manufacture of Mylan's ANDA Product within the United States, or importation of Mylan's ANDA Product into the United States, during the term of the '017 Patent would infringe the asserted claims under 35 U.S.C. §§ 271(a), (b), and/or (c)[8].  *Id.*  Novo Nordisk requested injunctive relief, a judgment that the effective date of any approval of Mylan's

---

[8] Novo Nordisk is no longer asserting contributory infringement of the '017 Patent under 35 U.S.C. § 271(c).

ANDA not be prior to expiration of the Asserted Patents, and reasonable attorneys' fees. *Id.* Novo Nordisk's claims concerning the '017 Patent were consolidated with lead case number C.A. No. 23-101 (CFC) on March 21, 2025. *See supra* ¶ 3.

16.    On April 25, 2025, Mylan served its answer, affirmative defenses, and counterclaims in response to Novo Nordisk's complaint. D.I. 284. Mylan denied the substantive allegations of Novo Nordisk's complaint and each claim for relief. *Id.* Mylan asserted affirmative defenses of invalidity and non-infringement, asserted counterclaims seeking declaratory judgment of non-infringement and invalidity, and requested injunctive relief, costs, and reasonable attorneys' fees. *Id.*

17.    On May 16, 2025, Novo Nordisk answered all of Mylan's counterclaims denying the substantive allegations and each claim for relief. D.I. 290.

18.    Plaintiffs' Final Election of Asserted Claims (7/25/2025) asserted the following claims against Defendant ("the Asserted Claims"):

| Patent No. | Asserted Claims |
|:---:|:---:|
| 8,129,343 | 4 |
| 11,318,191 | 10, 11, 18, 24 |
| 12,029,779 | 2, 7, 8, 10, 14 |
| 12,214,017 | 1, 3, 4, 9 |

### 3.    Other Stipulations or Certifications Impacting this Action

19.    On October 31, 2023, Novo Nordisk and Mylan entered into a stipulation to agree to be bound by a determination on the merits concerning any claims or counterclaims between Novo Nordisk and Mylan regarding the invalidity and/or unenforceability of the '343 and '122 Patents made in the MPI Ozempic Litigation (Case No. 22-1040 (CFC)). D.I. 58. The parties also agreed that, should the MPI Ozempic Litigation be resolved without any determination on the merits regarding the validity and/or unenforceability of the '343 and/or '122 Patent, all discovery and contentions regarding the validity and/or unenforceability of such patents taken or served in the MPI Ozempic Litigation shall be treated as if taken or served in this case. *Id.* The MPI Ozempic Litigation was resolved without any determination on the merits regarding the validity and/or unenforceability of either the '343 or '122 Patents.

20.     On March 5, 2024, Mylan amended its Paragraph IV certification as to the '122 Patent to a Paragraph III certification stating that Mylan seeks approval to market its product following the expiration of the '122 Patent.

**B.     Asserted Patents and Claims**

21.     On July 18, 2025, Mylan provided to Novo Nordisk its Final Election of Prior Art.  On July 25, 2025, Novo Nordisk provided to Mylan its Final Election of Asserted Claims.

### 1.     The '343 Patent

22.     Novo Nordisk asserts that Mylan's submission of its ANDA, and the commercial manufacture, use, sale or offer for sale in the United States, and importation into the United States of Mylan's ANDA Product would infringe claim 4 of the '343 Patent.

23.     Mylan has stipulated to infringement of claim 4 of the '343 Patent under 35 U.S.C. § 271(e)(2)(A), unless such claim is found invalid or unenforceable.

24.     Novo Nordisk alleges that Mylan cannot prove by clear and convincing evidence that claim 4 of the '343 Patent is invalid.  On September 22, 2025, Mylan informed Novo Nordisk that Mylan would not present any invalidity defenses to the '343 Patent. The parties are negotiating a stipulation to remove the '343 Patent from the litigation, so arguments regarding validity or infringement of the '343 Patent will not be presented at trial.

25.     Claim 4 of the '343 Patent recites: "A compound having the following name N-ε$^{26}$-[2-(2-[2-(2-[2-(2-[4-(17-Carboxyheptadecanoylamino)-4(S)-carboxybutyrylamino]ethoxy)ethoxy]acetylamino)ethoxy]ethoxy)acetyl][Aib8,Arg 34]GLP-1-(7-37)peptide."  This compound is also known as semaglutide.

### 2.     The '191 Patent

26.     Novo Nordisk asserts that Mylan's submission of its ANDA, and the commercial manufacture, use, sale or offer for sale in the United States, and importation into the United States of Mylan's ANDA Product would infringe claims 10, 11, 18, and 24 of the '191 Patent.

27.     Mylan has stipulated to infringement of claims 10, 11, and 18 of the '191 Patent under 35 U.S.C. § 271(e)(2)(A), except as to any of those claims that are found invalid or unenforceable.  Mylan has also stipulated to infringement of claim 24 under 35 U.S.C. § 271(e)(2)(A), unless such claim is found invalid or unenforceable, with respect to only the prefilled pens containing semaglutide solution as its sole active ingredient, and solely in a concentration of 2.4 mg/0.75 mL (3.2 mg/mL) semaglutide solution.  *Id.*  The parties are negotiating a formalized stipulation reflecting Mylan's positions.

28.     Novo Nordisk alleges that Mylan cannot prove by clear and convincing evidence that any of claims 10, 11, 18, and 24 of the '191 Patent are invalid.

29.    Claim 1 of the '191 Patent, which is not asserted but from which claims 10 and 11 of the '191 Patent depend, recites:  "A liquid pharmaceutical composition comprising:  0.5 to 10 mg/mL semaglutide, 0.0% (w/w) to 0.1% (w/w) phenol, and 8.2 to 8.9 mg/mL sodium chloride."

30.    Claim 10 of the '191 Patent recites:  "The liquid pharmaceutical composition according to claim 1 further comprising:  0.5 to 3.5 mg/mL semaglutide, 1 to 2 mg/mL of phosphate buffer, and pH in the range of about 7 to about 8."

31.    Claim 11 of the '191 Patent recites:  "The liquid pharmaceutical composition according to claim 1 further comprising:  0.5 to 3.5 mg/mL semaglutide, 8.25 mg/mL sodium chloride, and 1.42 mg/mL disodium hydrogen phosphate dihydrate."

32.    Claim 16 of the '191 Patent, which is not asserted but from which claim 18 of the '191 Patent depends, recites:  "A liquid pharmaceutical composition consisting of:  0.5 to 3.5 mg/mL semaglutide, 0% (w/w) to 0.1% (w/w) phenol, buffer, 6.5 to 12 mg/mL sodium chloride, at least 60% water, optionally histidine, and optionally one or more agents for adjusting pH."

33.    Claim 18 of the '191 Patent recites:  "The liquid pharmaceutical composition according to claim 16, wherein sodium chloride is in the amount of 8.2 to 8.9 mg/mL."

34.    Claim 23 of the '191 Patent, which is not asserted but from which claim 24 of the '191 Patent depends, recites:   "A liquid pharmaceutical composition consisting of:    3.2 mg/mL semaglutide, 0% (w/w) to 0.1% (w/w) phenol, 1.42 mg/mL disodium hydrogen phosphate dihydrate buffer, 8.25 mg/mL sodium chloride, pH of 7.4, at least 60% water, and optionally one or more agents for adjusting pH."

35.    Claim 24 of the '191 Patent recites:   "The liquid pharmaceutical composition according to claim 23, wherein the pharmaceutical composition is a parenteral composition."

### 3.    The '779 Patent

36.    Novo Nordisk asserts that Mylan's submission of its ANDA, and the commercial manufacture, use, sale or offer for sale in the United States, and importation into the United States of Mylan's ANDA Product would infringe claims 2, 7, 8, 10, and 14 of the '779 Patent.

37.    Mylan does not contest infringement of the asserted claims 2, 7, 8, 10, and 14 of the '779 Patent with respect to only Mylan's prefilled pens containing semaglutide solution in a concentration of 2.4 mg/0.75 mL (3.2 mg/mL), except as to any of those claims that are found invalid or unenforceable.

38.    Novo Nordisk alleges that Mylan cannot prove by clear and convincing evidence that any of claims 2, 7, 8, 10, and 14 of the '779 Patent are invalid.

39.    Claim 1 of the '779 Patent, which is not asserted but from which claim 2 of the '779 Patent depends, recites:  "A method for reducing body weight of a subject in need thereof, comprising administering semaglutide subcutaneously to the subject in an amount of about 2.4 mg weekly."

40.    Claim 2 of the '779 Patent recites:  "The method according to claim 1, wherein the semaglutide is administered once weekly."

41.    Claim 7 of the '779 Patent recites:  "A method for reducing body weight of a subject in need thereof, comprising administering semaglutide subcutaneously to the subject in an amount of 2.4 mg once weekly."

42.    Claim 8 of the '779 Patent recites:  "The method according to claim 7, wherein the subject is overweight."

43.    Claim 10 of the '779 Patent recites:  "The method according to claim 7, wherein the subject is suffering from obesity."

44.    Claim 14 of the '779 Patent recites:  "The method according to claim 7, wherein the subject is overweight and has at least one weight-related comorbid condition selected from the group consisting of hypertension, type 2 diabetes mellitus, and dyslipidemia."

### 4.    The '017 Patent

45.    Novo Nordisk asserts that Mylan's submission of its ANDA, and the commercial manufacture, use, sale or offer for sale in the United States, and

importation into the United States of Mylan's ANDA Product would infringe claims 1, 3, 4, and 9 of the '017 Patent.

46.    Mylan has stipulated to infringement of claims 1, 3, 4, and 9 of the '017 Patent under 35 U.S.C. § 271(e)(2)(A), except as to any of those claims that are found invalid or unenforceable.  The parties are negotiating a formalized stipulation reflecting Mylan's position.

47.    Novo Nordisk alleges that Mylan cannot prove by clear and convincing evidence that any of claims 1, 3, 4, and 9 of the '017 Patent are invalid.

48.    Claim 1 of the '017 Patent recites:    "A liquid pharmaceutical composition comprising: semaglutide; wherein said composition (a) does not contain phenol; and (b) is administered parenterally; and (c)(i) is an aqueous solution comprising at least 60% (w/w) water or (ii) further comprises one or more pharmaceutically acceptable excipients selected from the group consisting of a buffer or an isotonic agent; and wherein the semaglutide is in the range of 0.01 mg/ml–10.0 mg/ml; and wherein the pH of the composition is in between 7.0 and 7.8."

49.    Claim 3 of the '017 Patent recites:    "The liquid pharmaceutical composition according to claim 1, wherein said composition comprises no added pharmaceutical preservative."

50.    Claim 4 of the '017 Patent recites:  "The liquid pharmaceutical composition according to claim 1, wherein said parenteral administration is subcutaneous administration."

51.    Claim 9 of the '017 Patent recites:  "The liquid pharmaceutical composition according to claim 1, wherein said composition has a pH in the range of 7.0–7.4."

### C.    Claim Construction

52.    With respect to the '343 and '191 Patents, the parties submitted a Joint Claim Construction Chart on July 31, 2023, D.I. 37, and an Amended Joint Claim Construction Chart on November 29, 2023, D.I. 67.  The Court conducted a hearing on the disputed terms on December 13, 2023.  On March 21, 2025, the Court issued a Claim Construction Order construing the disputed terms and adopting the parties' agreed-to constructions of certain other terms.  D.I. 269.

53.    For the '343 Patent, the Court has adopted the parties' stipulated construction        of        the        term,        "N-$\varepsilon^{26}$-[2-(2-[2-(2-[2-(2-[4-(17-Carboxyheptadacenoylamino-4(S)-carboxybutyrylamino]ethoxy)ethoxy]acetylamino)ethoxy]ethoxy)acetyl][Aib8,Arg 34]GLP-1-(7-37)peptide," as having its plain and ordinary meaning, which is "the compound    corresponding    to    the    chemical    N-$\varepsilon^{26}$-[2-(2-[2-(2-[2-(2-[4-(17-Carboxyheptadacenoylamino-4(S)-

15

carboxybutyrylamino]ethoxy)ethoxy]acetylamino)ethoxy]ethoxy)acetyl][Aib8,Arg 34]GLP-1-(7-37)peptide, which is also called 'semaglutide.'" *Id.* at 2.

54.    For the '191 Patent, the Court has adopted the parties' stipulated construction of the relevant terms: "0[.0]% (w/w) to 0.1% (w/w) phenol"; "optionally one or more agents for adjusting pH"; "optionally histidine"; and "disodium hydrogen phosphate dihydrate." *Id.*

55.    For the '779 Patent, the Court has adopted the parties' stipulated constructions of the terms: "A method for reducing body weight of a subject in need thereof"; and "about." D.I. 265.

56.    The relevant claim constructions are:

| Term | Construction |
|------|-------------|
| "N-$\varepsilon^{26}$-[2-(2-[2-(2-[2-(2-[4-(17-Carboxyheptadacenoylamino-4(S)-carboxybutyrylamino]ethoxy)ethoxy]acetylamino)ethoxy]ethoxy)acetyl][Aib8,Arg34]GLP-1-(7-37)peptide"  '343 Patent, claim 4 | Plain and ordinary meaning, which is "the compound corresponding to the chemical N-$\varepsilon^{26}$-[2-(2-[2-(2-[2-(2-[4-(17-Carboxyheptadacenoylamino-4(S)-carboxybutyrylamino]ethoxy)ethoxy]acetylamino)ethoxy]ethoxy)acetyl][Aib8,Arg34]GLP-1-(7-37)peptide, which is also called 'semaglutide.'" |
| "0[.0]% (w/w) to 0.1% (w/w) phenol"  '191 Patent, claims 10 and 11 (by dependency from claim 1), claim 18 (by dependency from claim 16), and claim 24 (by dependency from claim 23) | Plain and ordinary meaning, which is "0[.0]% (none) to 0.1% (w/w) phenol." |

| Term | Construction |
|------|--------------|
| "optionally one or more agents for adjusting pH"<br><br>'191 Patent, claim 18 (by dependency from claim 16) and claim 24 (by dependency from claim 23) | Plain and ordinary meaning, which is "one or more agents for adjusting pH can be, but need not be, present." |
| "optionally histidine"<br><br>'191 Patent, claim 18 (by dependency from claim 16) | Plain and ordinary meaning, which is "histidine can be, but need not be, present." |
| "disodium hydrogen phosphate dihydrate"<br><br>'191 Patent, claim 11 | Plain and ordinary meaning, which is "a compound having the formula $Na_2HPO_4$ in the dihydrate form." |
| "A method for reducing body weight of a subject in need thereof"<br><br>'779 Patent, claim 2 (by dependency from claim 1), claim 7, and claims 8, 10, and 14 (by dependency from claim 7) | The preamble is limiting.  It requires that the method be employed for the purpose of reducing the patient's body weight, and it does not require a showing of efficacy or tolerability.*<br><br>*For the avoidance of doubt, this construction does not preclude argument concerning what relevance, if any, efficacy and tolerability have on the question of the person of ordinary skill in the art's motivation to combine and reasonable expectation of success. The parties also reserve their rights regarding the impact of the construction on other issues, including objective indicia (secondary considerations). |
| "about"<br><br>'779 Patent, claim 2 (by dependency from claim 1) | About means $\pm$ 10%. |

17

**D.    Pending Motions**

57.    Aside from the parties' respective motions *in limine* listed below in Section IX, there are no currently pending motions.

**II.    Jurisdiction and Standing**

58.    This is an action for patent infringement, arising under the patent laws of the United States, Title 35, Section 101, *et seq.*, as well as the Hatch-Waxman Act, 21 U.S.C. § 355, against Mylan as a result of its ANDA filing related to a generic version of Wegovy®.

59.    The counterclaims in this consolidated action for patent infringement of the Asserted Patents arise under the patent laws of the United States, Title 35, United States Code, § 100 *et seq.*, including 35 U.S.C. §§ 271 and 281 and the Hatch-Waxman Act, codified as amended at 21 U.S.C. § 355(j), and 35 U.S.C. §§ 271(a)-(c) and (e)(2)(A).

60.    Subject matter jurisdiction of the Court is not disputed for the claims or counterclaims and is based on the patent laws of the United States Code, Title 35, Section 101, *et seq.*, 35 U.S.C. §§ 271, *et seq.*, and 28 U.S.C. §§ 1331 and 1338.

61.    Personal jurisdiction is not contested for purposes of this action for the claims or counterclaims and is based on the reasons stated in each Complaint, Defendant's Answers, and Plaintiffs' Answers to Counterclaims.

62.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) and is not disputed for purposes of this action for the claims or counterclaims.

63.     Mylan does not dispute Novo Nordisk's standing.

64.     For purposes of the counterclaims in this action, no party contests standing.

## III.    Joint Statement of Admitted Facts

65.     A joint statement of the facts which are admitted and require no proof is attached as **Exhibit 1**.  The parties agree that these stipulated facts require no proof at trial and will become part of the evidentiary record in this case.  Any party, with prior notice to the other party, may read any or all of the uncontested facts to the Court, and will be charged for the time used to do so.  However, a party need not read these facts into the record for them to be considered by the Court in reaching its ultimate judgment.

## IV.    Statement of the Issues of Fact Which Remain to Be Litigated

66.     Novo Nordisk's Statement of Contested Issues of Fact that remain to be litigated is attached as **Exhibit 2**.

67.     Mylan's Statement of Contested Issues of Fact that remain to be litigated is attached as **Exhibit 3**.

68.     The parties submit that if this Court determines that any issue identified in a party's statement of issues of fact that remain to be litigated is more properly considered an issue of law, it should be so considered.

69.     The parties reserve the right to modify or supplement their statement of issues of fact that remain to be litigated to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

## V.     Statement of the Issues of Law Which Remain to Be Litigated

70.     Novo Nordisk's Statement of Contested Issues of Law that remain to be litigated is attached as **Exhibit 4**.

71.     Mylan's Statement of Contested Issues of Law that remain to be litigated is attached as **Exhibit 5**.

72.     The parties submit that, if this Court determines that any issue identified in a party's statement of issues of law that remains to be litigated is more properly considered an issue of fact, it should be so considered.

## VI.     Exhibits

### A.     Trial Exhibits

73.     A joint list of pre-marked trial exhibits that may be offered by any party is attached as **Exhibit 6**.  The parties' joint trial exhibits will be identified with JTX prefixes.

74.    Novo Nordisk's list of exhibits with Mylan's objections to those exhibits is attached as **Exhibit 7**.  Novo Nordisk's trial exhibits will be identified with PTX prefixes.

75.    Mylan's list of exhibits with Novo Nordisk's objections to those exhibits is attached as **Exhibit 8**.  Mylan's trial exhibits will be identified with DTX prefixes.

76.    The parties' respective keys to their objection codes are appended at the end of each exhibit list.

77.    Subject to the remaining provisions of this Order, no party may add to its exhibit list or use at trial an exhibit not present on its list absent stipulation or Order of the Court or for the limited purpose of impeachment.  The parties, however, may supplement these exhibit lists, as agreed between the parties or as permitted by the Court upon a showing of good cause.

78.    Each party reserves the right to use exhibits from the other party's exhibit list, even if not separately listed on its own exhibit list, and each party reserves the right to raise objections to the use of the exhibit by the offering party, even if the exhibit is on the opposing party's exhibit list.  All objections to such exhibits are preserved and the listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side.  Each party may object to the relevance of any evidence offered by

the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.  Any exhibit, once admitted, may be used equally by either party subject to any limitations as to its admission into evidence.  The exhibit lists may include exhibits that may not necessarily be offered or introduced into evidence.

79.    The parties agree that if either party removes or otherwise withdraws an exhibit from its exhibit list, the other party may amend its exhibit list to include that same exhibit.  The parties also agree that the parties may make objections to such exhibit, other than an objection based on untimely listing.

80.    Certified translations of foreign-language documents may be offered into evidence if accompanied by a copy of the original foreign language document that was translated.  The parties will not object to the admissibility of such certified translations on the basis that they are translations if the translation was commissioned by one of the parties to the litigation or their counsel.

81.    Nothing herein shall be construed as a stipulation or admission that a document is entitled to any weight in deciding the merits of this case.  The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

82.    At least one business day before the first day of trial for the trial currently scheduled to start on March 2, 2026, i.e., February 27, 2026, counsel will deliver to the Courtroom Deputy a completed, joint AO Form 187 exhibit and witness list.  The parties may prepare and deliver the joint list of exhibits in Excel format or any format preferred by the Court.

83.    Each party reserves the right to use exhibits not set forth in its exhibit list for purposes of impeachment.  Such exhibits used solely for impeachment and not included on an exhibit list may not be admitted into evidence absent good cause.

84.    Any party, with prior notice to the other party, may read into the record any request for admission responses, interrogatory responses, or pleadings at trial and these materials need not be included in any exhibit lists.  Notice must be provided by 7:00 p.m. ET one calendar day before any party intends to read such statements at trial.  To the extent there are any objections, the objecting party must raise them by 8:00 p.m. ET the same day and the parties shall meet and confer as soon as possible thereafter, but no later than 9:00 p.m. ET the same day, to resolve the objections.  If the parties are unable to resolve the objections, the objections will be presented to the Court as appropriate before trial proceedings resume the following day.

85.    All exhibits shall be pre-marked with a stamp on the first page, using the following color labels and containing the following prefix identifiers:

23

    a.     Plaintiffs' Exhibits (Yellow Labels):  PTX (beginning with PTX-001)

    b.     Defendant's Exhibits (Blue Labels):  DTX (beginning with DTX-1000)

    c.     Joint Exhibits (Green Labels):  JTX (beginning with JTX-001)

86.    The parties will be presenting exhibits electronically and respectfully request access to the courtroom shortly before trial, at the Court's convenience, to test the Court's audio-video equipment and set up their equipment.

87.    Absent agreement between the parties and approval by the Court, no exhibit will be admitted unless offered into evidence through a witness, testifying live or by deposition.  Any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number.  Exhibits not objected to that are used with a witness at trial will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony.  Nothing herein shall be construed as a stipulation or admission that the document is entitled to any weight in deciding the merits of this case.

88.    The provisions in this section do not apply to exhibits to be used for impeachment, which do not need to be provided to the other side in advance of their use.

89.    The parties will meet and confer at the end of each day to discuss the list of admitted exhibits used during that trial day.  The parties will jointly coordinate with Court staff to ensure the Court and all parties have an accurate list of admitted exhibits, and in the event of a dispute, timely raise any issues in the morning.

**B.    Stipulations Concerning Trial Exhibits**

90.    Legible copies of documents may be offered and received into evidence to the same extent as originals.  The parties may substitute pre-marked exhibits identified on **Exhibits 6–8** with color copies and/or more legible versions provided that the content and text is identical to that which was previously identified in **Exhibits 6–8** and previously exchanged among the parties in preparing this [Proposed] Joint Pretrial Order.  For particularly voluminous documents (e.g., patent application file histories), the parties may use excerpts of the documents identified on **Exhibits 6–8** provided: (i) such excerpts do not mischaracterize or misrepresent the contents of the document as a whole; (ii) such excerpts are disclosed in accordance with the procedures set forth below, in Section VI.D.1.; and (iii) the other party is permitted to add a reasonable number of pages to the intended excerpt necessary to provide adequate context and completeness for the intended excerpt. Any such excerpt shall be labeled as a sub-exhibit to the complete exhibit.

91.    In the case of trial exhibits that have been previously marked as deposition exhibits, to remove duplicates and improve legibility of the exhibits used

at trial, the parties agree that the trial exhibit shall be treated as identical to the indicated deposition exhibit regardless of whether it bears a deposition exhibit sticker, unless a genuine question is raised as to whether the trial exhibit and deposition exhibit are identical. The parties also agree that two exhibits that are identical (notwithstanding different Bates numbers) shall be treated as identical, unless a genuine question is raised as to whether the exhibits are identical.

92.    The parties' are negotiating a stipulation that certain documents shall be deemed prima facie authentic for purposes of admissibility at trial, with no need for additional proof of authenticity at trial, and that certain documents shall be deemed "business records" that meet the requirements of Federal Rule of Evidence 803(6) and therefore are not subject to exclusion from evidence at trial on grounds of hearsay, provided that such trial exhibits appear to be unaltered from the condition in which they were produced by the producing party.

93.    Any trial exhibit that was produced in discovery by a party and that on its face appears to have been authored by an employee, officer, or agent of the party that produced such document, will be deemed to be a true and correct copy of a document maintained in that producing party's files as of the date of the party's document collection under Federal Rule of Evidence 901. No foundation need be laid for the authenticity of such documents at trial. For clarity, this provision does not obviate the need to otherwise lay the proper foundation for admissibility of a

document or of testimony about that document (e.g., relevance or personal knowledge of a fact witness).

### C.    Procedure for Trial Exhibit Disclosure

#### 1.    Exchange of Exhibits

94.    Each party shall provide by electronic mail to opposing counsel a list of all exhibits (by exhibit number) that the party intends to use in direct examination of witnesses, sorted by witness name, **by 7:00 p.m. ET two calendar days before they will be used** at trial.  For example, a listing of all exhibits intended for use during direct examination of witnesses on Monday, March 2, 2026, would be exchanged by email before 7:00 p.m. ET on Saturday, February 28, 2026.  A party seeking to substitute a pre-marked exhibit with a color and/or more legible version of the same shall provide such substitutions at this time.  Notwithstanding the foregoing, each party reserves the right to timely amend or supplement the list with a reasonable number of exhibits provided such exhibits are promptly identified, provided that such supplementation does not prejudice the receiving party.

95.    The provisions in this section do not apply to exhibits to be used for cross-examination, including impeachment, which do not need to be provided to the other side in advance of their use.

### 2.     Objections to Exhibits

96.     The party receiving identification of exhibits intended for use in direct examination of witnesses pursuant to the previous paragraph shall inform the party identifying the exhibits of any objections **by 8:00 p.m. ET one calendar day before they will be used**, and the parties shall meet and confer as soon as possible thereafter, but **by no later than 9:00 p.m. ET the same day** to resolve such objections.  Any unresolved objections shall be brought to the Court's attention for resolution no later than the start of the trial day on which the exhibit is intended to be used.

### 3.     Courtesy Copies of Exhibits

97.     Prior to the start of direct examination of a particular witness, the party conducting the direct examination will provide the other party with two copies of binders containing all exhibits and illustrative aids that they intend to use with that witness on direct examination and will provide three copies to the Court.  The parties agree that this provision does not require the advanced disclosure of exhibits to be used to impeach or on cross-examination of any witness, provided such exhibits were identified on a party's exhibit list (i.e., **Exhibits 6–8**) unless used solely for purposes of impeachment.  However, prior to the start of the cross-examination of any witness, the parties agree to provide the other with two copies of witness binders that contain all of the exhibits expected to be used on cross-examination of that

witness and will provide three copies to the Court except for any such exhibits used solely for purposes of impeachment.

### D.    Illustrative Aids

98.    The parties may use illustrative aids, also called demonstratives, which do not need to be identified on their respective lists of trial exhibits.  Novo Nordisk's illustrative aids will be identified with PDX prefixes.  Mylan's illustrative aids will be identified with DDX prefixes.

99.    The parties shall exchange complete color representations of all illustrative aids by electronic mail or FTP to be used in connection with direct examination (specifically identifying the exhibit in connection with the witness) and not in an intentionally random order, including as necessary making any physical exhibits available for inspection by 7:00 p.m. ET the night before they will be used in Court and objections thereto by 8:00 p.m. ET that same night.  The parties shall meet and confer to resolve objections by 9:00 p.m. ET that same night.  If good faith efforts to resolve objections to illustrative aids fail, the objecting party shall bring its objections to the Court's attention prior to the applicable witness being called to the witness stand.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an illustrative aid or waiver of objection to the aid.  If any of the illustrative aids change after the

deadline, the party intending to use the illustrative aid will promptly notify the opposing party of the change(s).

100.   Each illustrative aid shall identify by exhibit number all trial exhibits and/or expert reports that form the basis of the illustrative aid.

101.   The party seeking to use an illustrative aid will provide a color representation of the illustrative aid to the other side in PDF or PPT form.  For video or animations, the party seeking to use the illustrative aid will provide it to the other side in an electronic format allowing preview of the video or animation.

102.   For any irregularly sized or physical exhibit (e.g., model) for use in opening statements or in connection with direct examination, the party seeking to use the illustrative aid will provide a color representation as a PDF of an 8.5 x 11 copy of the exhibit and make the exhibit available for inspection, including taking photographs, by 12:00 p.m. ET on the day before the exhibit will be used in Court. Because the parties may be in Court throughout the day, the parties agree to work together to identify a mutually agreeable time for an inspection of any irregularly sized or physical exhibit.  The parties shall exchange objections thereto by 8:00 p.m. ET that night, and the parties will meet-and-confer in an effort to resolve any objections by 9:00 p.m. ET.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention at the beginning of proceedings the following day.

103.   The provisions in this section do not apply to illustrative aids created during testimony or argument at trial or to illustrative aids to be used for cross-examination, neither of which need to be provided to the other side in advance of their use.  In addition, ballooning, blow-ups, excerpting or highlighting of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

### 1.    Procedure for Disclosures Related to Opening Statements and Closing Arguments

104.   Notwithstanding the provisions above related to the timing of exchanges of illustrative aids, exhibits, or designated deposition testimony, with respect to opening statements, the parties shall identify any illustrative aids, exhibits, or designated deposition testimony they intend to use by 5:00 p.m. ET the day before trial is scheduled to begin.  The parties will exchange complete color representations of all illustrative aids to be used in opening statements, in the order they are intended to be used at the same time.  The parties shall provide any objections thereto by 7:00 p.m. ET that same night.   The parties agree to meet and confer to the extent objections remain pending no later than 9:00 p.m. ET on the same day to attempt to resolve any such objections so that the exhibits may be used during opening statements or objections can be resolved by the Court.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention at the beginning of proceedings the following day.

105.    The parties are not obligated to exchange illustrative aids, exhibits, or designated deposition testimony they intend to use as part of closing statements so long as the exhibits or designated deposition testimony have been admitted into evidence during the course of trial.

## VII.    Witnesses

### A.    List of Witnesses to be Called

106.    Novo Nordisk's list of the names of the fact and expert witnesses that it will call and may call at trial, live or by deposition, is attached as **Exhibit 9**.[9]  Novo Nordisk's statement setting forth the qualifications of each of their expert witnesses and the subject matter of each expert witness's testimony is attached as **Exhibit 9A**. The *curriculum vitae* of every expert expected to testify for Novo Nordisk at the time of trial is attached as **Exhibit 9B**.

107.    Mylan's list of the names of the fact and expert witnesses that it will call and may call at trial, live or by deposition, is attached as **Exhibit 10**, including Mylan's statement setting forth the qualifications of each of its expert witnesses and the subject matter of each expert witness's testimony.  The *curriculum vitae* of every

---

[9] Novo Nordisk has identified Mr. David Mitchell as a "may call" witness. However, it is Mylan's understanding that Novo Nordisk does not intend to call Mr. Mitchell live at trial. As Mylan has informed Novo, Mr. Mitchell is no longer employed by Mylan and resides outside of the subpoena power of the Court.

expert expected to testify for Mylan at the time of trial is attached as **Exhibit 10(1)- 10(6)**.

### B.     Agreements Regarding Presentation and Identification of Witnesses

108.   By 6:00 p.m. ET on February 18, 2026, the parties shall exchange updated witness lists which, in good faith, identify all of the witnesses each party intends to call to testify, whether the witness will testify in person or by deposition and, if by deposition, a list of deposition designations.  If a party has concluded at that point that it will not call a particular witness live or by deposition, that witness should no longer appear on that party's updated witness list.

109.   Each side will provide to the other side the name of any witness that it intends to call to testify, whether live or by deposition testimony in the anticipated order of presentation of those witnesses, by no later than 7:00 p.m. ET two calendar days prior to the day the witness is expected to testify.  The other side will provide any objections to any such witness by 8:00 p.m. ET the following evening, and the parties shall meet and confer to resolve any objections to such witnesses by 9:00 p.m. ET the same evening.  If good faith efforts to resolve the objections fail, the party objecting shall bring its objections to the Court's attention prior to the witness being called to the witness stand.

110.  A party shall promptly notify the opposing party of any change to the identity of witnesses, the anticipated order of witnesses, or the mode of witness presentation (i.e., live or by deposition).

111.  Any witness not listed in **Exhibits 9 or 10** will be precluded from testifying at trial absent good cause shown.  The listing of a witness on a party's witness list does not require the party to call that witness to testify and does not imply or establish that the listing party has the power to compel the live testimony of that witness or make that witness available to the opposing party.  The listing of a witness by a party on its witness list does not waive any objections to that witness should the opposing party attempt to call that witness to testify, either live or by deposition.

112.  The parties reserve the right to call one or more additional witnesses whose testimony is necessary to establish admissibility of any trial exhibit, if the admissibility of the exhibit is challenged by an opposing party.  The parties' witness lists represent the parties' good faith understanding and expectation about which witnesses are expected to be called live in person, or by deposition, at trial.  To the extent that a witness's circumstances change, or a witness otherwise becomes unavailable for trial, each party reserves the right to call that witness by deposition to the extent permitted under the Federal Rules of Civil Procedure and the Federal Rules of Evidence and subject to resolution of objections by the other party.

113.   Each fact witness that testifies live during trial will testify only once.  If both parties desire to call a particular fact witness, the fact witness will testify live during the case-in-chief or rebuttal case of the party in which the witness is employed or is otherwise affiliated, unless otherwise agreed upon.  To the extent necessary, a party will be allowed to hold open the record to allow for the inclusion of such testimony in its case-in-chief.  Since each such fact witness will testify live only once during trial, the scope of the cross-examination for such a witness may exceed the scope of the direct.  This provision does not preclude a fact witness from testifying a second time as a rebuttal witness to the extent allowed by the Court.

114.   The parties may object at trial to the opposing party's proffered expert testimony, including testimony based upon improper legal standards, and/or testimony that was not otherwise disclosed during discovery despite an obligation to do so.  The parties' objections, if any, to certain expert witnesses will be set forth in greater detail in their objections made at the time of trial.  The parties agree that the objections to expert testimony as beyond the scope of expert disclosures should be argued at trial.  The time taken to argue and decide such objections will be charged to the losing party.

115.   All witnesses deposed in this case testified by deposition in English. The parties agree that all witnesses will testify at trial in English.  Fact witnesses for

whom English is not a first language may still choose to have an interpreter present while testifying at trial to provide translation assistance.

116.   Fact witnesses who may be called to testify (other than a party's corporate representative) will not be permitted to attend any trial proceeding (outside of their own examination) at which testimony will be given, until such witness is fully excused, unless agreed to by the parties or ordered by the Court.   During adjournments in the trial of no more than five days, including breaks during the trial day and overnight, the offering party may discuss with a witness his or her testimony on direct examination until the witness is passed for cross-examination and cross-examination has commenced, but is prohibited from discussing with the witness his or her testimony once cross-examination has begun except as permitted under Local Rule 43.1 or by express permission of the Court.   Once cross-examination of the witness is concluded, the offering party may discuss with the witness his or her testimony on re-direct examination.  For avoidance of doubt, expert witnesses who may be called (or re-called) to testify are permitted to attend all trial proceedings and need not be sequestered.  If a witness will be called to the stand to testify at a later time during the trial, once the witness has completed his or her cross-examination, that witness can speak with counsel before taking the stand to testify at a later time during the trial.

### C.     Testimony by Deposition

117.   The deposition testimony that Novo Nordisk may offer into evidence is identified in **Exhibit 11**.

118.   The deposition testimony that Mylan may offer into evidence is identified in **Exhibit 12**.

119.   For the avoidance of doubt, with respect to expert witnesses who served reports, no deposition designations or counter designations are allowed.   This Pretrial Order contains the maximum universe of deposition designations, counter-designations, and objections to admission of deposition testimony.   None of the foregoing shall be supplemented without approval of all parties or leave of the Court based on good cause shown.

120.   A party's decision not to introduce some or all of the testimony of a witness designated by that party herein shall not be commented upon by the other party at trial.

121.   Each party reserves the right to use testimony designated by any other party (whether as a designation or a counter-designation), even if not separately identified by a party in its own deposition designation list.   The parties may use any testimony they have counter-designated in response to any affirmative designations introduced at trial by an opposing party.   Similarly, a party may designate testimony identified as affirmative testimony in this order as a counter-designation or counter-

counter-designation.  The parties may offer some or all of the deposition set forth herein at trial.

122.  Unless otherwise agreed between the parties, the party offering deposition testimony (other than for the purpose of impeachment) shall identify the deposition testimony from **Exhibits 11 and 12** to be offered by 7:00 p.m. ET three calendar days before the transcript is to be played in court.  The other party shall identify any objections and the specific pages it intends to play for its counter designations by 7:00 p.m. ET two calendar days before the transcript is to be played in court.  To the extent necessary, the designating party will provide the opposing party with any objections to the opposing party's counter-designations and any counter-counter designations by 8:30 p.m. ET the same day and the parties shall meet and confer as soon as possible thereafter, but no later than 9:00 p.m. ET, to resolve the objections.  If the objections to the disputed testimony cannot be resolved by the parties, the objections will be presented to the Court as appropriate before trial proceedings resume on the day of the testimony's anticipated use.  Any party presenting video testimony shall provide the proposed final clip report of the video (including counter-designations) to the other side by 7:00 p.m. ET one day before it is to be played in Court, or as the parties may otherwise agree.

123.  To the extent that deposition designations or counter-designations are admitted into evidence, they must be either played by video or read in open court.

For those depositions that have been videotaped, to the extent admissible, a party shall introduce the deposition excerpt by videotape rather than by transcript, unless otherwise agreed to by the parties or by order of the Court. If a party opts to introduce deposition testimony, any counter-designations of that same witness's deposition testimony must also be submitted in the same format. When deposition designation excerpts are introduced, all admissible deposition counter-designation excerpts will be introduced simultaneously in the sequence in which the testimony was originally given.

124. Designated deposition testimony will be offered to the Court as designated testimony that the parties play by video in Court and will count against the party's trial presentation time. Specifically, any affirmative designations offered by a party will count against that party's trial presentation time whereas any counter-designations by the other party will count against the party who made the counter-designations.

125. All irrelevant and redundant material, including colloquy between counsel, objections, and statements by the court reporter or videographer, will be removed when the testimony is played at trial. For those witnesses whose deposition testimony will be played, the parties shall be permitted to make brief transition statements to introduce the witness by name, position or title, and/or the company with which he or she is associated, the time for which shall be charged to the party

offering the witness's testimony, unless otherwise agreed to by the parties. However, counsel shall not be permitted to argue or comment on the evidence during transition statements. For the purposes of allowing for objections, any party that wants to make a transition statement must disclose the transition statement with the deposition designations.

126.   With respect to those witnesses who are listed as "live" on the parties' witness list or are presented live at trial, no deposition designations or counter-designations shall be presented in lieu of cross-examination.

127.   Should a "live" witness become unavailable for trial, a party may designate deposition testimony that it intends to play in lieu of the witness's appearance, upon reasonable notice. The other party shall have an opportunity to offer counter-designations.

128.   If an exhibit is referenced in a deposition designation, the offering party may move to have the exhibit entered into the record if it is included on a trial exhibit list and is not otherwise objected to or if it is included on the joint trial exhibit list.

129.   Unless objected to, a party's designation of a page and line from a particular transcript shall be automatically deemed to include any errata indicated for that page and line in the attached errata sheets.

130.   When a witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with three copies of the transcript of the

designations and counter-designations that will be played or read.  The parties shall provide the time to be charged to each party to the Court with the transcripts.

131.  The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or cross-examination of a witness.  Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

## VIII.  Parties' Brief Statement of Intended Proofs

### A.    Novo Nordisk's Statement

132.  Novo Nordisk's brief statement of intended proofs is attached as **Exhibit 13**.

133.  This case does not involve a claim for damages.  Novo Nordisk reserves the right to seek attorneys' fees, costs, and expenses pursuant to 35 U.S.C. § 285.  Novo Nordisk reserves the right to seek damages if Mylan commercially manufactures, uses, sells, offers to sell, or imports into the United States its accused ANDA product prior to the expiration of the Asserted Patents.

### B.    Mylan's Statement

134.  Mylan's brief statement of intended proofs is attached as **Exhibit 14**.

135.   This case does not involve a claim for damages.  Mylan reserves the right to seek attorneys' fees, costs, and expenses pursuant to 35 U.S.C. § 285.  Mylan reserves the right to respond to any request damages that may later be raised by Plaintiffs.

## IX.    Motions *In Limine*

136.   Mylan's motion *in limine* and related briefing are attached in **Exhibit 15.**

137.   Mylan's Motion *in limine* Number 1, at Exhibit 15, asks the Court to preclude Novo from arguing at trial that Mylan induces infringement of the '779 patent claims by allegedly encouraging the combination of multiple lower-dose pens to achieve a "2.4 mg" or "about 2.4 mg" semaglutide dose.

## X.    Other Matters

### A.    Discovery

138.   The time for discovery in this action has expired.

### B.    Non-Jury Trial

139.   This is a bench trial without jurors.

### C.    Order of Presentation

140.   Subject to approval of the Court, the parties request the order of presentation at trial as follows:

a.    **[Novo Nordisk's Position]** Opening statement by Novo Nordisk, followed by opening statement by Mylan;

42

b.      Novo Nordisk's presentation of evidence on infringement, for which Novo Nordisk bears the burden of proof;

c.      Mylan's presentation of evidence rebutting Novo Nordisk's presentation on infringement and Mylan's presentation of evidence on invalidity, for which Mylan bears the burden of proof;

d.      Novo Nordisk's presentation of evidence rebutting Mylan's presentation on invalidity, including any presentation by Novo Nordisk on objective indicia (secondary considerations) of non-obviousness;

e.      Mylan's presentation of evidence rebutting Novo Nordisk's presentation on objective indicia (secondary considerations) of non-obviousness.

f.      **[Mylan's Position]** Opening statement by Novo Nordisk, followed by opening statement by Mylan;

g.      Novo Nordisk's presentation of evidence on infringement, for which Novo Nordisk bears the burden of proof;

h.      Mylan's presentation of evidence rebutting Novo Nordisk's presentation on infringement and Mylan's presentation of evidence on invalidity of the '779 Patent (method of treatment), for which Mylan bears the burden of proof;

43

i.     Novo Nordisk's presentation of evidence rebutting Mylan's presentation on invalidity of the '779 Patent, including any presentation by Novo Nordisk on objective indicia (secondary considerations) of non-obviousness related to that patent;

j.     Mylan's presentation of evidence rebutting Novo Nordisk's presentation on objective indicia (secondary considerations) of non-obviousness related to the '779 Patent;

k.     Mylan's presentation of evidence on invalidity of the '017 and '191 Patents (formulations), for which Mylan bears the burden of proof; and

l.     Novo Nordisk's presentation of evidence rebutting Mylan's presentation on invalidity of the '017 and '191 Patents.

The parties would like to discuss the Court's preferences for closings, as noted below.

### D.    Closing Arguments and Post-Trial Briefing

141.   The parties propose discussing at the Pretrial Conference the timing of closing arguments, including whether the Court prefers closing arguments made at the close of evidence or closing and/or oral arguments following post-trial briefing and the order in which the parties will present such arguments. The parties further propose discussing the timing, content, and length of closing and/or oral arguments

and post-trial briefing at the end of trial.  If the Court prefers closing and/or oral arguments following post-trial briefing, the parties also propose discussing the timing for such arguments.

142.  ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

### E.    Length of Trial

143.  The trial is scheduled for 5 days, starting on March 2, 2026, through March 6, 2026.  D.I. 272.  The trial will be timed and, considering the Court's procedures for counting time, and the nature and extent of the parties' disputes, the parties request that the parties split the trial presentation time equally.  The parties propose that, subject to the Court's schedule, each side will be allotted 15 hours (inclusive of opening statements and closing arguments at the close of evidence (if any)) for trial.  Unless otherwise ordered, time will be charged to a side for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, its closing arguments at the close of evidence (if any), and all sides' argument on any motions or objections a party raises to another party's exhibits and illustrative aids.  With respect to deposition testimony, the time available for each side's presentation shall be reduced by the

length of its own designations and counter-designations.  The party introducing the deposition testimony shall identify for the Court the amount of time that should be attributed to each side for the testimony that is played or read in Court.

144.   Counsel shall keep a running total of their side's trial time used by counsel, and shall reconcile the calculations, as needed, with the Courtroom Deputy.

### F.    Handling of Confidential Information at Trial

145.   The Protective Order (D.I. 42), insofar as it restricts the dissemination and use of "CONFIDENTIAL INFORMATION" and "HIGHLY CONFIDENTIAL INFORMATION," shall generally not apply to the introduction of evidence at the trial.  However, in the event either party seeks to introduce into evidence documents marked "CONFIDENTIAL INFORMATION" and "HIGHLY CONFIDENTIAL INFORMATION" that include discussion of future projections or other forward-looking financial statements, or discussion of matters (e.g., other drug products) not at issue in this action, the party whose information is at issue shall have the opportunity to ask to close the courtroom and/or seek redaction of the trial transcripts made available to the public.

146.   Closed courtroom:  The parties agree that the individuals designated as Corporate Legal Representative pursuant to Section IV.A.2 of the Protective Order (D.I. 42) may be allowed to stay in the courtroom during all presentation of evidence. The parties further agree that absent good cause shown, each party's corporate

representative pursuant to Fed. R. Evid. 615(a)(2) may also be allowed to stay in the courtroom during all presentation of evidence.  The parties further agree that any requests to otherwise close the courtroom may be taken up as they arise during trial consistent with the principles set forth in *In Re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019).

### G.    Other Issues

147.    This Court's Scheduling Order limits Mylan to a total of 25 prior art references with no more than 6 prior art references for any single patent.  Mylan has narrowed the number of references per the Court's Scheduling Order but has continued to rely on a number of references as "background" art.  Novo Nordisk reserves the right to object at trial to Mylan's use of these "background" references for an improper purpose.

## XI.    Amendments to the Pleadings

148.    The parties do not desire to amend any pleadings at the present time.

## XII.    Certification of Settlement Discussions

149.    The parties certify that they have engaged in good-faith efforts to explore the resolution of the litigation by settlement.  The parties, through their respective counsel, have considered the possibility of settlement.  The parties have not been able to resolve the litigation at this juncture by settlement.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED: _____

_____
The Honorable Colm F. Connolly
Chief, United States District Judge

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Travis J. Murray*
_____
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Plaintiffs Novo Nordisk Inc. and Novo Nordisk A/S*

January 23, 2026

STAMOULIS & WEINBLATT LLC

*/s/ Stamatios Stamoulis*
_____
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 North West Street, 3rd Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*Attorneys for Defendant Mylan Pharmaceuticals Inc.*